## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GRADY WICKLUND and ) 
SANDI WICKLUND, ) 
                         ) 
         Plaintiffs, ) 
                         ) 
v. )         Case No. 08-CV-486-GKF-FHM 
                         ) 
PACIFIC CYCLE, L.L.C., ) 
PACIFIC CYCLE, INC., ) 
                         ) 
         Defendants. )

### OPINION AND ORDER

Before the Court is defendants' Motion for New Trial, Relief from Judgment or Remittitur [Docket No. 65]. Defendants contend the verdict should be set aside and a new trial granted because plaintiffs' counsel made an improper appeal to "the perceived anti-Chinese prejudice of the jurors." In the alternative, defendants ask the court to order remittitur under Fed.R.Civ.P. 60(b)(6).

A new trial may be granted when remarks about a case are made which the court believes may have influenced the jury to the prejudice of either party. *Garland Coal & Mining Co. v. Few*, 267 F.2d 785, 792 (10th Cir. 1959); *see also Fineman v. Armstrong World Indus.*, 980 F.2d 171, 206-07 3d Cir. 1992)(the test is whether or not improper remarks made it "reasonably probable" that the verdict was influenced by prejudicial statements). However, the alleged misconduct must ordinarily be objected to at the appropriate time. *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351-53 (8th Cir. 2002).

Where the trial court believes that the judgment for damages is excessive, that is, it is against the weight of the evidence, the court may order a remittitur and alternatively direct that there be a new trial if the plaintiff refuses to accept it. *Holmes v. Wack*, 464 F.2d 86, 88 (10th Cir. 1972). Where a court concludes there was error only in an excessive damage award, but not one also

tainting the finding of liability, the court may order a remittitur and alternatively direct a new trial

if the plaintiff refuses the remittitur, a widely recognized remedy.  *Melandris v. Merrill Lynch,*

*Pierce, Fenner & Smith Inc.,* 703 F.2d 1152, 1168 (10th Cir. 1981).

Plaintiffs Grady and Sandi Wicklund brought this action on a theory of manufacturers'

product liability.  On August 2, 2006, Grady Wicklund was riding a bicycle manufactured by a

Chinese company at the request of the defendants, Pacific Cycle, L.L.C. and Pacific Cycle, Inc.

(collectively referred to as "Pacific Cycle"), and imported to the United States by Pacific Cycle.  The

Wicklunds claim the bicycle was unreasonably dangerous and defective in the manner in which the

fender and fender bracket were designed or manufactured.  The fender bracket broke, which allowed

the fender to rotate backwards into the moving front wheel, causing the accident that injured Grady

Wicklund.  The jury empaneled in this case awarded the Wicklunds One Million, One Hundred

Thousand, One Hundred Seven Dollars and Six Cents ($1,100,107.06).

Pacific Cycle's first argument is that the Wicklunds' counsel "repeatedly, deliberately and

impermissibly played to the perceived anti-Chinese prejudice of the jurors, thereby irrevocably

tainting the verdict . . ."  Defendants point to the following statements made by plaintiffs' counsel

at trial as improper appeals to the jury based on "ethic prejudice":

> Thank you, Your Honor.  Made in China.  Three words that cause
> many concerns about the safety of products and raise issues of quality
> control and product safety concerns with products that are
> manufactured in China.

Opening Statement, Tr., p. 23: 15-18.

> The evidence in this case I think will be that Pacific Cycle will tell
> you that they market, import and distribute what they contend is high
> quality bikes.  But like many companies, **Pacific Cycle has elected
> to buy cheap Chinese products rather than buying products
> made in the U.S.**  They are selling a large number of these cheap
> products over a million a year in the U.S.  The evidence will be that
> they have no independent testing facility themselves.  They own no

2

> manufacturing plants themselves. They assume that the Chinese manufacturer tests the products for safety, but at least according to [defendants' corporate representative] Mr. Werwie's sworn testimony given in a video deposition given earlier in this case, he has no documentation to show that.

Opening Statement, Tr., p. 24: 17 to p. 25:4 (language in bold is language cited by Pacific Cycle).

> The Wicklunds are here simply seeking fair compensation for the damages that were caused to them as a result of the defective Chinese product that Pacific Cycle introduced into the marketplace. Thank you.

Opening Statement, Tr., p. 34: 16-20.

> Q. All right, now in this case Mr. Werwie's testimony that the Court heard yesterday was that they simply assumed that the manufacturer in China or the vendors in China do this testing and to his knowledge they don't have paperwork or proof of it. Do you think that's a reasonable approach for a company that brings over a million bikes a year into this country?
>
> A. I think that's the normal procedure in the industry.
>
> Q. Okay. **Does that make it right just because everybody is doing it, because everybody is building their bikes in China because it's cheap labor and cheap materials, does that make it right?**
>
> A. I think that in order to get them into the country you have to perform all of the safety tests that the Consumer Product Safety Commission requires.

Cross Examination of Pacific Cycle's Expert Witness, Tr., pp. 196:19 to 197: 8 (language in bold

is language referenced by Pacific Cycle).

> A. I'm not aware of the specific procedures that they employ. I know that the Taiwanese and the Chinese are expected to have those tests performed before the bikes come here.
> Q. Okay. **And so it's not only made in China, it's in China we trust?**
> A, It's in China we test.

Cross Examination of Pacific Cycle's Expert Witness, Tr., p. 198:5-10 (language in bold is language

referenced by Pacific Cycle).

Q.  Okay.  And Pacific Cycle family, I think you told us on direct includes Schwinn, GT, Roadmaster, Mongoose, Murray?

A.  I think those are all names that Pacific Cycle uses and their own name.

 Q.  And **do you think the Pacific Cycle name**, the brand name, do you think **they use that to try to suggest a quality product?**

A.  I think it's the name of the company.  You know, I'm not involved in that.  I see their name and all the others.  I don't know what went behind it.

Q.  Have you ever looked at their Web site, Pacific Cycle's?

A.  I probably have although not specific to this case.

Q.  Do you recall it says Pacific Cycles designs, markets and distributes high quality bicycles?

A.  I believe that's true.

Q.  So apparently it's their intent to suggest by the name Pacific Cycle it's a quality bike?

A.  Well, I think it is.  I think they have grown from a small company to the size that they are by putting components on their bicycles that are just a little better than their competitors.  My observation is that that's been what I believe to be the key to their success, just from personal observation.  If you look at two bicycles the same price, the Pacific one is going to have better components on it.

A.    Q.  Well, of course, Mr. Werwie tells us we can't even – we don't even know what distributor made the fender component in this case.  Do you?

A.  No, I don't.

 Q.  And well, don't you think it would be, **maybe we ought to call this brand like Big China, so the customer knows that this is an all Chinese bike?**

MR. PETTIGREW: Objection, argumentative.

THE COURT:  Sustained.

4

Cross Examination of Pacific Cycle's Expert Witness, Tr., pp. 200:9 to 201:15 (language in bold is

language referenced by Pacific Cycle).

> **Thank you, Your Honor.  Ladies and gentlemen, as I said yesterday "made in China" are the three words that unfortunately have become somewhat of a concern in this country, whether we are talking about lead paint on toys, toxic fumes from the drywall that's being imported, recent defects in the accelerators from Toyota.  They are issues of quality control and product safety concerns arising out of products that we import from China.  And in this case you have clearly heard that the strategy which has been adopted by Pacific Cycle raises some of those same concerns.**
> Now that law in this case as the judge has just instructed you is that Pacific Cycle is strictly liable for distributing a defective product into the marketplace.  Okay, well, what does that mean?  Strictly liable means if the product is defective, if that defect causes an injury to somebody like the Wicklunds, they owe for the damages it caused.  I mean, it's just that simple.  **You know, businesses that have chosen to export jobs to China for cheap labor, for cheap goods, I mean from a business side it's understandable, but when you choose to do that, if you get quality control issues you have to pay when people get harmed from those.  And that's all that this case is basically about.**
> You know, Pacific Cycle says they design, market and distribute high quality products, but the truth is that they have gone to China to get cheap products rather than buying products here in the United States.  **They have basically adopted the philosophy of "in China we trust."**  They bring in over a million products a year.  But what do they do?  Do they get any assurance that they are getting anything quality wise?  You know, Pacific Cycle has no manufacturing plant, they have no engineering department, they have no testing facilities.  They have offered you no evidence in this case of any type of quality control in the basic manufacturing process . . .

Closing Argument, Tr., p. 227: 3 to p. 228: 10 (language in bold is language referenced by Pacific

Cycle).

> You know, I suggested **maybe we should change the product from Pacific Cycle to Big China.**  Well, why?  Well, Pacific Cycle name a least, you think, well, that appears to be an American name and, you know, at least they want to suggest to consumers that it means

5

quality.  You know, they don't really want the consumer out there and Wal-Mart and Target to really know that they are bringing in over a million of these bikes from China and Taiwan without any proof that there has been any kind of safety testing or quality control.

Closing Argument, Tr., p. 229: 4-12 (language in bold is language referenced by Pacific Cycle).

Pacific Cycle points to the following statement made by plaintiffs' counsel in rebuttal argument:

**Counsel wants to say, well, he can't get up here and defend Toyota, he can't get up here and defend the Chinese toy makers. I'm not asking him to.  The point is we all know there are quality control issues with different products from China.  I mean surely Pacific Cycle knows that, unless they have got their head in the sand about that too.  And if you know you've got quality control issues from other companies with Chinese products, that would make me think, if I was a reasonable and responsible business, that I would want to double check and make sure my products that were coming from China were being properly tested, that they were being manufactured under proper quality controls.** That's why I raised that issue.  Do they do that?  Really, do they do anything to make sure that the products coming off those assembly lines are properly tested or quality controlled?  Well, they sure couldn't prove it because when I asked them to prove it they couldn't even tell me who made that fender.  It's some vendor, Xideshing or whatever the name of that company that made the frame is.  But we don't even know where it came from.  So how would we know if there was any quality control if we don't even know where it came from?  **So that's why China is an issue because we all know if we're buying products from there we need to be a little extra careful.**

Rebuttal Argument, Tr., pp. 247: to 248:  (language in bold is language referenced by Pacific Cycle).

Upon review of the briefs and the record, the court denies Pacific Cycle's motion for new trial premised on alleged attorney misconduct.  First, defendants raised no objections on the grounds that plaintiffs' counsel was improperly appealing to ethnic prejudice.  In fact, defendants' counsel made only one objection, set forth above, on the ground that the question was argumentative, which the Court sustained.  Second, defendants made no motions for mistrial based upon alleged attorney

misconduct involving appeals to ethnic prejudice.  Third, as part of his effort to show that the fender bracket was defective, plaintiffs' counsel's theme was that Pacific Cycle has no engineering or testing department, and that Pacific Cycle simply assumed that quality control testing was being performed by the Chinese manufacturers.  Pacific Cycle has not met its burden of showing that plaintiffs' counsel's remarks made it "reasonably probable" that the verdict was influenced by appeals to ethnic prejudice

Pacific Cycle's second argument is that the Court should order a remittitur because the jury's judgment for damages was excessive.

The parties stipulated in the Pretrial Order that Grady Wicklund's medical bills totaled $74,034.29. [Docket #39, pg. 2].  The parties further stipulated that Grady and Sandi Wicklund incurred lost wages in the amount of $25,442.77.  Grady Wicklund testified at trial that he paid $500 for the motorized bicycle, plus $130 for shipping.  These four figures added together total $100,107,06.  The verdict awarded the Wicklunds that sum, plus exactly one million dollars ($1,000,000).[1]

This court must presume that the jury followed the court's jury instructions and awarded damages to the Wicklunds for the remaining, proper categories of damages.  The Wicklunds sought damages for the following, in addition to medical expenses and lost wages:  1) Grady Wicklunds' mental and physical pain and suffering, past and future; 2) Grady Wicklund's permanent disability; 3) Sandi Wicklund's stress and mental anguish; and 4) Grady Wicklund's disfigurement.  The Wicklunds did not seek an award of punitive damages.  *See* Pretrial Order, Docket No. 39, pg. 2.

---

[1] Pacific Cycle's corporate representative, Mr. Joe Werwie, III, testified by video deposition presented to the jury that the defendants imported "over a million" bicycles from China each year.  Plaintiffs' counsel repeatedly reminded the jury that defendants brought "over a million" bikes a year into the United States.  *See* Tr, pp. 24:12; 25:22; 228:5; 229:10; 230:3.

The question before this Court is:  Was the one million dollar damage award for Grady Wicklund's  pain and suffering, his disability and disfigurement, and Sandi Wicklund's stress and mental anguish excessive?

Grady Wicklund's injuries from the bicycle accident were, according to his attorney, mainly to his left wrist and left shoulder.  He underwent five surgeries following the accident: 1) a closed reduction and splinting of a comminuted fracture to the left wrist; 2) a second surgery on the left wrist to release the medial nerve and to take out an osteophyte; 3) outpatient surgery on July 27, 2007,  on his left shoulder for impingement and a partial rotator cuff tear; 4) a second surgery on his left shoulder to remove an anchor that had come loose and to repair the rotator cuff; and 5) outpatient surgery on December 22, 2008, for carpal tunnel release and ulnar nerve transposition.

The Wicklunds presented evidence to the jury that Grady Wicklund suffered some loss of range of motion and continued slight pain in his left wrist.  He testified that it took about two years for his left shoulder to get right, that he had the shoulder in a brace, and that he needed pain medications for the shoulder at times.  As for disfigurement, Wicklund has a permanent knot on his shoulder and scars "that don't really bother him that much."

Plaintiffs' counsel told the jury the following during closing argument

> I'm going to tell you what I told Mr. Wicklund from day one.  I think the value of their damages in this case are somewhere between 300,000 and 500,000.  But that's your call.  You know, we will trust your judgment on that matter.

Tr., 239: 10-14.  Counsel argues in his response, and this Court agrees, that the evaluation he voiced to the jury was in no way a limit on damages.  It does, however, bolster this Court's view, both at the time of the verdict, and now after time for further reflection, that the judgment for actual damages was excessive. The million dollars awarded in excess of medical expenses, lost wages, and cost of the bicycle is over 13 times the amount of the medical bills incurred.  In some cases, such

an award for pain and suffering, disability and disfigurement, and a spouse's stress and mental anguish might be warranted.  It is this Court's considered judgment that such an award is excessive under the facts of this case, where the disability and disfigurement wais not extensive, and the pain and suffering was relatively limited in time and/or intensity.  It appears the jury may have been influenced, not by appeals to ethnic passions, but by repeated references the "over a million" Schwinn, GT, Roadmaster, Mongoose, Murray, and other bicycles Pacific Cycle imports every year. For whatever reason, the additional million dollars in damages awarded by the jury is excessive, and this court hereby orders a remittitur of $500,000 of that additional million dollar award and, alternatively, directs a new trial if the plaintiffs refuse the remittitur.  In the event the plaintiffs accept the remittitur, a judgment will be entered against the Pacific Cycle defendants in the principal amount of $600,107.06, plus prejudgment interest in accordance with Oklahoma law accruing from July 18, 2010.

WHEREFORE, defendants' Motion for New Trial, Relief from Judgment or Remittitur [Docket No. 65] is granted in part and denied in part.  Within fourteen (14) days hereof, on or before September 3, 2010, plaintiffs shall file a written acceptance or rejection of the aforesaid remittitur.

IT IS SO ORDERED this 20th day of August, 2010.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma